**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Josephine Amatucci

    v.                                   Case No. 22-cv-202-SM-AJ

N.H. State Police Trooper Hawley Rae;
N.H. Circuit Court, District Division
Judge Melissa Countway; N.H. State Trooper
Mark Hensel; N.H. State Police Troop E;
N.H. Division of Motor Vehicles ("DMV");
and DMV Director John Marasco[1]

**REPORT AND RECOMMENDATION**

Before the court is Josephine Amatucci's complaint (Doc. No. 1) and her addenda to the Complaint (Doc. Nos. 3 to 10, 12, 14, 15, 22, 23, 24), naming as defendants two State Troopers; N.H. State Police Troop E; N.H. Circuit Court District Division Judge Melissa Countway; the N.H. Division of Motor Vehicles ("DMV"); and DMV Director John Marasco, in his individual and official capacities. The initial pleadings in this matter are before this court for preliminary review, pursuant to 28 U.S.C. § 1915(e)(2) and LR 4.3(d)(2).

**Preliminary Review Standard**

The court may dismiss claims in the initial pleadings filed

_____

[1] The Complaint naming John Marasco as a defendant identifies him as Director of the N.H. Department of Safety. The court construes the Complaint as naming him in his official capacity as the DMV Director and in his individual capacity.

by a plaintiff proceeding in forma pauperis, if: the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious.  See 28 U.S.C. § 1915(e)(2); LR 4.3(d)(2).  To determine whether to dismiss the plaintiff's claims for failure to state a claim upon which relief can be granted, the court strips away legal conclusions, takes as true the factual content in the complaint, as a whole, and the inferences reasonably drawn from those facts, and considers whether the plaintiff has stated a claim for relief that is plausible on its face.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In determining whether a pro se complaint states a claim, the court must construe the complaint liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

## Background

Three traffic stops involving Mrs. Amatucci in 2020 and 2021, the DMV Director's orders requiring her driving ability to be reexamined, and the suspension of Mrs. Amatucci's driver's license in 2022 after she failed to appear for scheduled retests, underlie the claims in this case.  The first of the pertinent

2

traffic stops occurred on February 26, 2020, when N.H. State Trooper Hawley Rae pulled over Mrs. Amatucci after she turned left onto Route 28 from Route 109 in Wolfeboro, New Hampshire. In objecting at the scene, Mrs. Amatucci denied that she had almost caused a crash.  Trooper Rae's traffic ticket charged Mrs. Amatucci with violating N.H. Rev. Stat. Ann. ("RSA") 265:30, in failing to stop at the stop sign at that intersection.  See Doc. No. 9-1, at 10.

The second traffic stop is summarized in a report attached to the original Complaint.  See Doc. No. 1-1, at 6.  On December 23, 2020, on a divided section of Gosling Road in Portsmouth, New Hampshire, N.H. State Trooper Nikita Klimashov saw Mrs. Amatucci pull out of a gas station, directly in front of his cruiser and attempt to turn the wrong direction on that one-way stretch of road.  See Doc. No. 1-1, at 6.  The trooper sounded his airhorn, causing Mrs. Amatucci to turn her car in the correct direction. After pulling her over and approaching the driver, Trooper Klimashov heard her describe the incident as not unsafe, and "no big deal," because it had not caused an accident.[2]

---

[2] Mrs. Amatucci received a traffic ticket on that date for a traffic violation described as "failure to keep right – rotary," in violation of RSA 265:23.  See Notice of Cleared Default, State v. Amatucci, No. 470-2021-cr-0003 (N.H. Cir. Ct., 10th Cir.,

The third incident occurred on June 3, 2021, when N.H. State Trooper Mark Hensel saw Mrs. Amatucci make a U-Turn across a double yellow line, onto the opposite shoulder of Route 16 in Ossipee, New Hampshire.  After pulling her over, Trooper Hensel spoke with Mrs. Amatucci, who said she did nothing wrong.  The trooper issued Mrs. Amatucci a ticket charging her with a "yellow/solid line" violation, in violation of RSA 265:22.  See Doc. No. 9-1, at 9.

Mrs. Amatucci pleaded not guilty to the traffic tickets issued by Troopers Rae and Hensel, and trials on those violations occurred on December 1, 2021 in the New Hampshire Circuit Court, Third Circuit, District Division in Ossipee ("Ossipee District Court").  The troopers and Mrs. Amatucci testified in those proceedings.  After each trial, Judge Melissa Countway issued a written order, which found that the troopers testified credibly and that the State had met its burden of proof.  The court found that Mrs. Amatucci was guilty of both traffic violations.  See State v. Amatucci, No. 464-2020-cr-270 (Ossipee Dist. Ct. Dec. 2, 2021) ("stop sign case") (Doc. No. 1-1, at 21-22); State v.

---

Dist. Div.-Portsmouth Apr. 7, 2022) (Doc. No. 1-1, at 30).  After a hearing on December 15, 2021, the state court entered an "administrative guilty" finding on that charge and imposed a fine.  See State v. Amatucci, No. 470-2021-cr-0003 (N.H. Cir. Ct., 10th Cir., Dist. Div.-Portsmouth Dec. 15, 2021).

Amatucci, No. 464-2021-cr-559 (N.H. Cir. Ct., 3d Cir., Dist. Div.-Ossipee Dec. 2, 2021) (Doc. No. 1-1, at 8-9) ("yellow/solid line case").

Judge Countway's order in the stop sign case includes a statement of the court's concerns:

> The . . . Defendant argued that she had the right to operate as she did, since she had arrived at the intersection first. The Court is concerned about the safety of other motorists under these circumstances and notes that the finding of guilty is intended to deter the Defendant from failing to stop and failing to yield to oncoming traffic in the manner described in this case.

Doc. No. 1-1, at 22.  A similar expression of the court's concerns appears in the order in the yellow/solid line case:

> The . . . Defendant's argument was focused on her belief that her driving was legal.  The Court is concerned about the safety of other motorists under these circumstances and notes that the finding of guilty is intended to deter the Defendant from conducting U-turns in the manner described in this case.

Doc. No. 1-1, at 9.  Mrs. Amatucci did not appeal the judgments in those Ossipee District Court cases.

New Hampshire law, RSA 263:7(I), authorizes the DMV Director to order a re-examination of a driver's abilities "for cause," and states specifically that "age," standing alone, does not constitute "cause."[3]  Id.  Trooper Rae summarized the December

---

[3] RSA 263:7(I) provides, in pertinent part, as follows:

2020, February 2021, and June 2021 traffic stops, as well as the
Ossipee District Court's concerns about Mrs. Amatucci, in a
December 29, 2021 report addressed to the DMV Bureau of Hearings.
Trooper Rae's report concludes with a request that Mrs. Amatucci
undergo a re-examination of her driving ability.  N.H. State
Police - Troop E, Trooper Rae, Request for Admin. Action (Dec.
29, 2021) (Doc. No. 1-1, at 29 & 6-7).

The DMV Director Marasco approved Trooper Rae's request for
re-examination of Mrs. Amatucci.  The DMV scheduled successive
driver's tests for Mrs. Amatucci in April, May, June, and August
2022.  See Doc. No. 1-1, at 3 (Apr. 4, 2022 DMV Notice); Doc. No.
1-1, at 25 (May 6, 2022 DMV Notice); see also In re Amatucci, No.
HR202211709, Report of Hearing Examiner (Aug. 11, 2022) (Doc. No.
9-1, at 4-6).  Mrs. Amatucci did not show up for those retests.
After she failed to appear three times for scheduled re-
examinations, Mrs. Amatucci's driver's license was suspended.

---

> The director may require with cause any person holding a
> license to drive motor vehicles . . . to pass such
> examination as to the person's qualifications as the
> director shall prescribe. . . .  No license shall be . . .
> continued in effect until the director is satisfied as to
> such person's fitness to drive a motor vehicle.  The age of
> the license holder shall not constitute cause for
> reexamination under this section.

Id.

See N.H. Code Admin. R. Saf-C 1009.02(g) ("[f]ailure to appear
[three] times for a scheduled reexamination . . . shall result
in an immediate suspension of the person's driver license"); see
also Doc. No. 9-1, at 8.

Mrs. Amatucci requested a hearing on the suspension of her
license and on the order that she retake the driver's test.  A
"Notice of Hearing" then directed Mrs. Amatucci to appear for an
administrative hearing on those matters.  Doc. No. 9-1, at 22.
That administrative hearing occurred on August 11, 2022.  The
evidence included Mrs. Amatucci's testimony and the statements of
DMV representative Michael Mercier, as well as the December 2021
Report prepared by Trooper Rae, and proof that Mrs. Amatucci had
failed to appear for three scheduled reexaminations.

The Hearings Examiner's September 21, 2022 written decision,
Doc. No. 9-1, at 4-6, states that the December 2021 Report gave
the DMV Director "cause" to require Mrs. Amatucci to complete a
reexamination.[4]  The Hearings Examiner also found that Mrs.
Amatucci had failed to appear for three scheduled driver's tests,

---

[4] RSA 263:7 authorizes the DMV Director to require a driver
to undergo reexamination for "cause," and that no license shall
continue in effect until the Director is satisfied as to that
person's fitness to drive.  See id.; see also Doc. No. 9-1, at
22.

which resulted in the temporary suspension of her license.  <u>Id.</u>
at 5.  The Hearings Examiner's decision allowed the license
suspension to remain in effect and notified Mrs. Amatucci that
she could retake the driver's test, pay the reinstatement fee,
and comply with other DMV requirements to restore her driving
privileges, and that she could appeal that decision in the N.H.
Superior Court.  <u>Id.</u>

Mrs. Amatucci did not file any state court appeal.  Her
driver's license remains suspended, and she has not appeared for
any reexamination of her driving ability.  She filed this lawsuit
in 2022 claiming violations of her state and federal rights.

## <u>Claims</u>

The claims asserted in this action are the following:

1.  Defendants violated Mrs. Amatucci's rights, in that:

    a.  The traffic tickets misrepresented her liability
    under state law; and

    b.  Trooper Rae's and Trooper Hensel's statements in
    the traffic ticket cases fraudulently misrepresented
    Mrs. Amatucci's liability for traffic violations.

2.  Ossipee District Court Judge Countway's orders in the
traffic ticket cases were erroneous and/or misrepresentative
of the law and facts, in violation of plaintiff's rights.

3.  Trooper Rae violated Mrs. Amatucci's federal rights,
giving rise to liability under 42 U.S.C. § 1983, in that:

a.   Trooper Rae requested that the DMV order Mrs. Amatucci's driving ability to be retested based, in part, upon her advanced age and/or age-related disabilities, manifesting unlawful discrimination on those bases, in violation of her Fourteenth Amendment equal protection rights; and

b.   Trooper Rae requested that the DMV order Mrs. Amatucci's driving ability to be retested because of Mrs. Amatucci's expressed opinions regarding her rights and duties under state driving laws, her objections to the traffic stops, and/or her arguments challenging the traffic tickets, thereby subjecting her to unlawful retaliation for her exercise of First and Fourteenth Amendment rights.

4.   DMV Director Marasco's order directing that Mrs. Amatucci be subjected to a driver's license re-examination violated Mrs. Amatucci's federal rights, rendering Director Marasco liable under 42 U.S.C. § 1983 in that:

a.   The re-examination was ordered without a prior hearing, in violation of her Fourteenth Amendment right to procedural due process; and

b.   The reexamination was ordered because of Mrs. Amatucci's expressed opinions regarding her rights and duties under state driving laws, her objections to the traffic stops, and/or her arguments challenging the traffic tickets, thereby subjecting her to unlawful retaliation for her exercise of First and Fourteenth Amendment rights.

5.   The DMV Director's suspension of Mrs. Amatucci's driver's license violated her right to due process as she was not afforded a hearing before that suspension, rendering the DMV Director liable under 42 U.S.C. § 1983.

6.   Defendants conspired to suspend Mrs. Amatucci's driver's license, in violation of her federal constitutional rights, rendering them liable under 42 U.S.C. § 1983.

7.   Defendants are liable for a hate crime or other

criminal misconduct, relating to the matters described in Mrs. Amatucci's pleadings.

## Discussion

I.  Eleventh Amendment

Mrs. Amatucci's list of defendants includes N.H. State Police Troop E, the DMV, as well as DMV Director Marasco and state troopers in their individual and official capacities.  The Eleventh Amendment generally precludes a plaintiff from suing the State or its agencies in federal court, unless the State has waived its Eleventh Amendment immunity, or a federal law provides the requisite waiver or abrogation of that immunity.  See Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015).  The Eleventh Amendment also bars suits for damages asserted against individual state officers in their official capacities, when the state is the real party in interest.  See Fantini v. Salem State College, 557 F.3d 22, 33 (1st Cir. 2009).  No waiver or abrogation of the Eleventh Amendment immunity applies to any of the claims against the DMV or the claims for damages against the defendant state officers in their official capacities.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 65-66 (1989); Davidson v. Howe, 749 F.3d 21, 27 (1st Cir. 2014).  Accordingly, the district judge should dismiss those claims and drop the DMV

10

and N.H. State Police Troop E as defendants.

II.  Judicial Immunity

The claims against the defendant Ossipee District Court
Judge are barred by the doctrine of absolute judicial immunity.
"[I]t is an axiom of black letter law that when a judge carries
out traditional adjudicatory functions, he or she has absolute
immunity for those actions." Zenon v. Guzman, 924 F.3d 611, 616
(1st Cir. 2019).  "Judicial immunity is appropriate unless a
judge is carrying out an activity that is not adjudicatory." Id.
at 617.  "[A]bsolute judicial immunity means not just immunity
from damages, but immunity from suit altogether." Id. at 617
n.10 (citation omitted).  All of the claims asserted against
Judge Melissa Countway arise from actions taken in her
adjudicatory capacity.  Accordingly, the district judge should
dismiss all of the claims asserted against Judge Countway, and
Judge Countway should be dropped as a defendant.

III. Collateral Estoppel (Claims 1 and 2)

Mrs. Amatucci has claimed that the traffic tickets in the
yellow/solid line case and the stop sign case, and the testimony
of the State Troopers in those proceedings, misrepresented her

11

liability under state traffic laws, and that the Ossipee District Court judge made similar errors of state law in finding her guilty of traffic violations in those cases.  See Claims 1 and 2. Those claims implicate the doctrine of collateral estoppel, which "bars a party to a prior action, or a person in privity with such party, from relitigating any issue or fact actually litigated and determined in the prior action."  412 S. Broadway Realty, LLC v. Wolters, 169 N.H. 304, 314, 147 A.3d 417, 426 (2016) (quotation marks and citation omitted).

Under New Hampshire law, which applies in this circumstance, collateral estoppel applies when the following requirements are met:

> (1) the issue subject to estoppel is identical in each action; (2) the first action resolved the issue finally on the merits; (3) the party to be estopped appeared in the first action or was in privity with someone who did; (4) the party to be estopped had a full and fair opportunity to litigate the issue; and (5) the finding at issue was essential to the first judgment.

Id. (quotation omitted); see also Goldstein v. Galvin, 719 F.3d 16, 22 (1st Cir. 2013).

Mrs. Amatucci was a party in the Ossipee District Court cases; issues relating to her liability for traffic violations and the credibility of the troopers' testimony were actually litigated and resolved in those cases; she had a full and fair

opportunity to litigate those issues; and the Ossipee District
Court's findings and conclusions of law on those issues were
essential to the judgments in the traffic ticket cases.  Mrs.
Amatucci's claims here, regarding the traffic violations and the
troopers' alleged misrepresentations, which form the basis of
Claims 1(a), 1(b), and 2 here, satisfy each of the prerequisites
for collateral estoppel.  Accordingly, in light of such
conclusive proof of all of the elements of collateral estoppel,
the district judge should dismiss those claims,[5] and Trooper
Hensel should be dropped as a defendant.


IV.  Age and Disability Discrimination (Claim 3(a))

    The Fourteenth Amendment Equal Protection Clause dictates
"that 'similarly situated persons are to receive substantially
similar treatment from their government.'" Kuperman v. Wrenn,
645 F.3d 69, 77 (1st Cir. 2011) (citation omitted).  In the
absence of direct evidence of class-based animus, a plaintiff may
establish an equal protection violation by identifying and

---

[5] As collateral estoppel warrants dismissal of Claim 2, this
court need not express any opinion as to whether the Rooker-
Feldman doctrine also warrants dismissal of Claim 2 in light of
the final judgments in the traffic ticket cases.

relating "specific instances where persons situated similarly in all relevant aspects were treated differently." Fincher v. Town of Brookline, 26 F.4th 479, 486 (1st Cir. 2022) (citation and internal quotation marks omitted).

Trooper Rae's report refers explicitly to Mrs. Amatucci's age and/or to the trooper's concern that she suffers from age-related "declining health" as matters warranting reexamination.[6] Those explicit references are sufficient at this stage of the case for the court to direct service of her claims of equal

---

[6] The report states, in part, as follows:

. . . .

Based upon her above interactions with several troopers, it is believed that AMATUCCI's actions show a pattern of conduct that causes a concern for her ability to drive safely and obey traffic laws.  AMATUCCI's erratic driving and disbelief she is committing any motor vehicle violations is concerning.  She seems to believe as long as she did not cause a crash, she did nothing wrong.  She appears unwilling to change her driving behavior, which is of upmost concern. There is also concern her mental health is declining and she is both mentally and physically unable to safely operate a motor vehicle.  The State is not unsympathetic to AMATUCCI, being an elderly woman with possible declining health, but it needs to consider the safety of the entire motoring public over the individual.

. . . .

N.H. State Police, Request for Admin. Action (Dec. 29, 2021) (Doc. No. 1-1, at 29 & 6-7).

protection violations based on her age and/or perceived disabilities.  Accordingly, in the Order issued this date, the court has directed service of Claim 3(a) upon Trooper Rae.[7]

V.    Retaliation (Claims 3(b) and 4(b))

Mrs. Amatucci asserts that Trooper Rae's request that her driving ability be reexamined, as well as the DMV Director's order approving that request, were actions taken in retaliation for her exercise of First Amendment and Fourteenth Amendment rights.  Specifically, she claims she suffered adverse consequences because expressed beliefs regarding her rights and obligations under state traffic laws, she objected to the traffic stops, and she challenged the traffic tickets in state court.[8]

> To state a First Amendment retaliation claim, [plaintiff's] complaint must allege that (1) [plaintiff] engaged in constitutionally protected conduct, (2)

---

[7] Mrs. Amatucci has not asserted any ADA Title II claim here.  Accordingly, the court need not consider the effect of Theriault v. Flynn, 162 F.3d 46 (1st Cir. 1998) on her claims. See id. at 50 ("The ADA . . . does not protect disabled individuals from all differences in treatment stemming from their disabilities, and it certainly does not require licensing officials to refrain from evaluating safety risks because an applicant appears to be disabled.").

[8] Mrs. Amatucci makes a passing reference to retaliation based on her filing of lawsuits naming a sheriff as a defendant. Her pleadings, however, do not support any finding of a causal connection between that lawsuit and the reexamination request and order at issue.

[plaintiff was] subjected to an adverse action by
[defendants], and (3) the protected conduct was a
substantial or motivating factor in the adverse action.  The
third prong of this test asks whether [plaintiff has]
alleged that [defendants] had retaliatory animus.  And to
succeed, [plaintiff] must show that [defendants']
retaliatory animus was the but-for cause of [plaintiff's]
injuries, meaning that the adverse action against [the
plaintiff] would not have been taken absent the retaliatory
motive.

Gattineri v. Town of Lynnfield, 58 F.4th 512, 514-15 (1st Cir.

2023) (citations and internal quotation marks omitted).  A causal

connection satisfying the plaintiff's prima facie case can be

established by a "'[c]lose' temporal proximity between a

plaintiff's protected activity and the state's retaliatory

conduct.'" Rivera-Corraliza v. Puig-Morales, 794 F.3d 208, 226

(1st Cir. 2015) (citation omitted).  But "[t]he government can

[ultimately] avoid liability by proving that it would have made

the same decision without the impermissible motive." Texas v.

Lesage, 528 U.S. 18, 21 (1999).

     The facts alleged by Mrs. Amatucci state First and

Fourteenth Amendment retaliation claims upon which relief can be

granted as to Trooper Rae's and the DMV Director's acts relating

to the request for and scheduled reexaminations of her driving

skills.  Accordingly, in the Order issued this date, the court

has directed defendants Trooper Rae and the DMV Director to

respond to Mrs. Amatucci's retaliation claims (Claims 3(b) and

4(b)).[9]


VI.   Procedural Due Process Claims (Claims 4(a) and 5)

The Fourteenth Amendment prohibits state deprivations of liberty or property without due process of law. U.S. Const. amend. XIV.  "[T]he Due Process Clause applies to the deprivation of a driver's license by the State." Dixon v. Love, 431 U.S. 105, 112 (1977).

> "[The court's] identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Mrs. Amatucci alleges that the orders directing her to undergo a re-examination of her driving ability and suspending

---

[9] Mrs. Amatucci has not asserted a First Amendment retaliation claim concerning the suspension of her driver's license.  Nor could she survive preliminary review of such a claim, as she failed to appear for three scheduled driver tests in 2022, triggering the suspension of her driver's license.  See N.H. Code Admin. R. Saf-C 1009.02(g); cf. Texas v. Lesage, 528 U.S. 18, 21 (1999) (no liability under section 1983 where government shows that adverse act would have been taken for reasons other than alleged retaliation).

her license without prior hearings violated her rights to procedural due process.  The Order issued this date directs Director Marasco to respond in his individual capacity to Mrs. Amatucci's claim for damages with respect to Claims 4(a) and 5, and to respond in his official capacity with respect to her request for injunctive relief on those claims.

## VII. Conspiracy to Suspend License (Claim 6)

> A civil rights conspiracy under section 1983 is commonly defined [as] "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages."  To establish a civil rights conspiracy, a plaintiff must show "not only a conspiratorial agreement but also an actual abridgment of some federally-secured right."

Sanchez v. Foley, 972 F.3d 1, 11 (1st Cir. 2020) (citations omitted).

Mrs. Amatucci claims that the defendant state troopers, the Ossipee District Court judge, the DMV, and the DMV Director conspired to suspend her driver's license without a hearing, in violation of her federal rights.  Mrs. Amatucci's claim fails to plead facts suggesting the existence of any agreement among those defendants to suspend her license or otherwise violate her civil rights.  Accordingly, the district judge should dismiss her claim

asserting a civil rights conspiracy (Claim 6).

VIII. Criminal Conduct (Claim 7)

Mrs. Amatucci asserts claims based on the alleged criminal conduct of defendants.  She does not have standing, however, to obtain a decision in this case as to whether any defendant has perpetrated a crime.  See Akande v. Doe, No. 12-10742-RWZ, 2012 WL 1658981, at *2, 2012 U.S. Dist. LEXIS 65460, at *3-6 (D. Mass. May 10, 2012).  Accordingly, the district judge should dismiss Claim 7.

## Conclusion

For the foregoing reasons, the magistrate judge recommends that:

> 1.    The district judge should dismiss all claims for damages asserted against any state official in his or her official capacity; all claims for relief asserted against Judge Melissa Countway; all claims for relief asserted against N.H. State Trooper Mark Hensel; and all claims for relief asserted against the DMV and N.H. State Police Troop E;

> 2.    The DMV, N.H. State Police Troop E, N.H. State Police Trooper Mark Hensel, and Judge Melissa Countway should be dropped as defendants; and

> 3.    The district judge should dismiss Claims 1, 2, 6, and 7, as numbered in this R&R.

Any objections to this Report and Recommendation must be

filed within fourteen days of receipt of this notice.  Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file any objection within the specified time waives the right to appeal the district court's Order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).  Only those issues raised in the written objections to this Report and Recommendation "'are subject to review in the district court,'" and any issues "'not preserved by such objection are precluded on appeal.'"  Id. (citations omitted).


_____
Andrea K. Johnstone
United States Magistrate Judge

March 28, 2024

cc:  Josephine Amatucci, pro se
     N.H. Attorney General's Office