UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci

    v.                                                                                          Case No. 22-cv-202-SM-AJ

Hawley Rae, et al.

**REPORT AND RECOMMENDATION**

Following the suspension of her New Hampshire driver's license, plaintiff Josephine Amatucci, appearing pro se and in forma pauperis, sued several individuals involved in the suspension process. Following preliminary review, the undersigned Magistrate Judge recommended dismissal of all claims against all defendants, except for certain claims against New Hampshire State Trooper Hawley Rae and New Hampshire Division of Motor Vehicles Director John Marasco. (Doc. No. 25). In the absence of an objection from Mrs. Amatucci, Judge McAuliffe approved the report and recommendation. (Doc. No. 32). Presently before the court for a report and recommendation pursuant to LR 72.1 are the defendants' motion to dismiss (Doc. No. 45) and Mrs. Amatucci's motions for summary judgment (Doc. Nos. 27/9040, 31/9062, 35/9073 and 37/9080), motion for judgment as a matter of law (Doc. No. 42/9097) and motions for hearing

(Doc. Nos. 44/9115 and 46/9119).[1]  As explained below, the defendants' motion should be granted and Mrs. Amatucci's motions should be denied.

### Factual Background[2]

A.  Traffic stops

This case stems from three traffic stops involving Mrs. Amatucci in 2020 and 2021.  First, on February 26, 2020, Trooper Rae stopped Mrs. Amatucci after she passed through a stop sign and turned left onto Route 28 from Route 109 in Wolfeboro, New Hampshire.  In contesting the stop at the scene, Mrs. Amatucci denied that there was a stop sign at the intersection and that she had almost caused a crash. Trooper Rae's traffic ticket charged Mrs. Amatucci with violating N.H. Rev. Stat. Ann. ("RSA") 265:30, for failing to stop at the stop sign. (Doc. No. 9-1 at 10).

Next, on December 23, 2020, N.H. State Trooper Nikita Klimashov saw Mrs. Amatucci pull out of a gas station onto a divided section of Gosling Road in Portsmouth, New Hampshire -- directly in front of his cruiser -- and attempt to turn in the

---

[1] As a courtesy to Mrs. Amatucci, the court includes the four-digit number she has given to her filings along with the docket number the court has assigned to her filings.

[2] The court recounts the facts as set forth in Mrs. Amatucci's complaint, complaint addenda and the various documents submitted with those filings.

wrong direction on that one-way stretch of road. See Doc. No. 1-1 at 6. The trooper sounded his airhorn, causing Mrs. Amatucci to turn her car in the correct direction. After she pulled over, Mrs. Amatucci explained to Trooper Klimashov that the incident was not unsafe, and "no big deal," because it had not caused an accident. See Doc. No. 1-1 at 6. Mrs. Amatucci received a traffic ticket on that date for a traffic violation described as "failure to keep right – rotary," in violation of RSA 265:23. See Notice of Cleared Default, State v. Amatucci, No. 470-2021-cr-0003 (N.H. Cir. Ct., 10th Cir., Dist. Div.-Portsmouth Apr. 7, 2022 (Doc. No. 1-1 at 30). After a hearing on December 15, 2021, the state court entered an "administrative guilty" finding on that charge and imposed a fine. See State v. Amatucci, No. 470-2021-cr-0003 (N.H. Cir. Ct., 10th Cir., Dist. Div.-Portsmouth Dec. 15, 2021).

The third incident occurred on June 3, 2021, when N.H. State Trooper Mark Hensel saw Mrs. Amatucci make a u-turn across a double yellow line, onto the opposite shoulder of Route 16 in Ossipee, New Hampshire. After Trooper Hensel pulled her over, Mrs. Amatucci said she did nothing wrong. The trooper issued Mrs. Amatucci a ticket charging her with a "yellow/solid line" violation, in violation of RSA 265:22. See Doc. No. 9-1, at 9.

Mrs. Amatucci pleaded not guilty to the traffic violations alleged by Troopers Rae and Hensel, and trials on those

3

violations occurred on December 1, 2021 in the New Hampshire Circuit Court, Third Circuit, District Division in Ossipee ("Ossipee District Court"). The troopers and Mrs. Amatucci testified in those proceedings. After each trial, Judge Melissa Countway issued a written order, finding that the troopers testified credibly and that the State had met its burden of proof. The court found that Mrs. Amatucci was guilty of both traffic violations. See State v. Amatucci, No. 464-2020-cr-270 (Ossipee Dist. Ct. Dec. 2, 2021) ("stop sign case") (Doc. No. 1-1, at 21-22); State v. Amatucci, No. 464-2021-cr-559 (N.H. Cir. Ct., 3d Cir., Dist. Div.-Ossipee Dec. 2, 2021) (Doc. No. 1-1, at 8-9) ("yellow line case").

Judge Countway's order in the stop sign case includes a statement of the court's concerns:

> The . . . Defendant argued that she had the right to operate as she did, since she had arrived at the intersection first. The Court is concerned about the safety of other motorists under these circumstances and notes that the finding of guilty is intended to deter the Defendant from failing to stop and failing to yield to oncoming traffic in the manner described in this case.

Doc. No. 1-1 at 22.  A similar expression of the court's concerns appears in the order in the yellow line case:

> The . . . Defendant's argument was focused on her belief that her driving was legal.  The Court is concerned about the safety of other motorists under these circumstances and notes that the finding of guilty is intended to deter the Defendant from conducting U-turns in the manner described in this case.

4

Doc. No. 1-1, at 9.  Mrs. Amatucci did not appeal the judgments in those Ossipee District Court cases.

B. License suspension proceedings

Under New Hampshire law, the DMV Director is authorized to order a re-examination of a driver's abilities "for cause," and states specifically that "age," standing alone, does not constitute "cause."  RSA 263:7.[3]  Id.  Trooper Rae summarized the three traffic stops described above, as well as the Ossipee District Court's concerns about Mrs. Amatucci, in a December 29, 2021, report to the DMV Bureau of Hearings. Trooper Rae's report concludes with a request that Mrs. Amatucci undergo a re-examination of her driving ability.  Request for Admin. Action (Dec. 29, 2021) (Doc. No. 1-1, at 29 & 6-7).  DMV Director Marasco approved Trooper Rae's request for re-examination of Mrs. Amatucci.  The DMV scheduled successive examinations for Mrs. Amatucci in April, May, June, and August 2022.  See Doc. No. 1-1,

---

[3] RSA 263:7(I) provides, in pertinent part, as follows:

> The director may require with cause any person holding a license to drive motor vehicles . . . to pass such examination as to the person's qualifications as the director shall prescribe. . . .  No license shall be . . . continued in effect until the director is satisfied as to such person's fitness to drive a motor vehicle. The age of the license holder shall not constitute cause for reexamination under this section.

Id.

5

at 3 (Apr. 4, 2022 DMV Notice); Doc. No. 1-1, at 25 (May 6, 2022 DMV Notice); see also In re Amatucci, No. HR202211709, Report of Hearing Examiner (Aug. 11, 2022) (Doc. No. 9-1, at 4-6).

Mrs. Amatucci did not show up for those retests. After she failed to appear three times for scheduled re-examinations, Mrs. Amatucci's driver's license was suspended. See N.H. Code Admin. R. Saf-C 1009.02(g) ("[f]ailure to appear [three] times for a scheduled reexamination . . . shall result in an immediate suspension of the person's driver license"); see also Doc. No. 9-1, at 8.

Mrs. Amatucci requested a hearing on the suspension of her license and on the order that she retake the driver's test. A "Notice of Hearing" directed Mrs. Amatucci to appear for an administrative hearing on those matters. Doc. No. 9-1, at 22. That administrative hearing occurred on August 11, 2022. The evidence included Mrs. Amatucci's testimony and the statements of DMV representative Michael Mercier, as well as the December 2021 Report prepared by Trooper Rae, and proof that Mrs. Amatucci had failed to appear for three scheduled reexaminations. The Hearings Examiner's September 21, 2022 written decision, Doc. No. 9-1, at 4-6, states that the December 2021 Report gave the DMV Director "cause" to require Mrs. Amatucci to complete a reexamination. The Hearings Examiner also found that Mrs. Amatucci had failed to appear for three scheduled driver's tests, which resulted in the

6

temporary suspension of her license.  Id. at 5.  The Hearings Examiner's decision allowed the license suspension for the multiple failures to appear to remain in effect and notified Mrs. Amatucci that she could retake the driver's test, pay the reinstatement fee, and comply with other DMV requirements to restore her driving privileges, and that she could appeal that decision to the New Hampshire Superior Court.  Id.

Mrs. Amatucci did not appeal the DMV decision.  Her driver's license remains suspended, and she has not appeared for any reexamination of her driving ability.  She filed this lawsuit in 2022 claiming violations of her state and federal rights.

C. Legal claims

The operative claims remaining in this case after preliminary review are asserted under 42 U.S.C. § 1983 against Trooper Rae and Director Marasco in both their official and individual capacities:

1. Claims against Trooper Rae

A.  Trooper Rae requested that the DMV order Mrs. Amatucci's driving ability to be retested based, in part, upon her advanced age and/or age-related disabilities, manifesting unlawful discrimination on those bases, in violation of her Fourteenth Amendment equal protection rights.

B.  Trooper Rae requested that the DMV order Mrs. Amatucci's driving ability to be retested because of Mrs. Amatucci's expressed opinions regarding her rights and duties under state driving laws, her

objections to the traffic stops, and/or her arguments challenging the traffic tickets, thereby subjecting her to unlawful retaliation for her exercise of First and Fourteenth Amendment rights.

2. Claims against Director Marasco
A.  The re-examination was ordered without a prior hearing, in violation of her Fourteenth Amendment right to procedural due process.

B.  The reexamination was ordered because of Mrs. Amatucci's expressed opinions regarding her rights and duties under state driving laws, her objections to the traffic stops, and/or her arguments challenging the traffic tickets, thereby subjecting her to unlawful retaliation for her exercise of First and Fourteenth Amendment rights.

C.  The DMV Director's suspension of Mrs. Amatucci's driver's license violated her right to due process as she was not afforded a hearing before that suspension, rendering the DMV Director liable under 42 U.S.C. § 1983.

## **Legal Standard**

The defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Mrs. Amatucci's complaint fails to state a claim for which relief can be granted. To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must include in her complaint factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Courts may augment those pleaded facts

8

and inferences with information from "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

To test a complaint's sufficiency, the court must first identify and disregard statements that "merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678 (alterations omitted)). Second, the court must credit as true all nonconclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. See id. In light of the plaintiffs' pro se status, the court liberally construes his pleadings. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

## Legal Analysis

A. Claims Against Trooper Rae

   1. Equal Protection -- Age/Disability Discrimination

The Fourteenth Amendment's Equal Protection Clause dictates "that 'similarly situated persons are to receive substantially similar treatment from their government.'" Kuperman v. Wrenn, 645 F.3d 69, 77 (1st Cir. 2011) (citation omitted). The sole basis for this claim is Trooper Rae's notation, in the Request for Administrative Action, that "[t]he State is not unsympathetic to

9

AMATUCCI, being an elderly woman with possible declining health, but it needs to consider the safety of the entire motoring public over the individual."[4] Based on this comment, Mrs. Amatucci asserts that "[Trooper Rae] bas[ed] her Complaint on the age of the Plaintiff, stating that age was a consideration of the mental health, and physical ability to drive." Compl. (Doc. No. 1).

Mrs. Amatucci's claim fails for at least two reasons. First, a full and fair reading of Trooper Rae's report makes it clear to the court that Mrs. Amatucci's age was not a factor in Trooper's Rae's request for re-examination. The first three pages of the request recount the dangerous driving and near-

---

[4] Trooper Rae's request states, more fully:

. . . .
Based upon her above interactions with several troopers, it is believed that AMATUCCI's actions show a pattern of conduct that causes a concern for her ability to drive safely and obey traffic laws. AMATUCCI's erratic driving and disbelief she is committing any motor vehicle violations is concerning. She seems to believe as long as she did not cause a crash, she did nothing wrong. She appears unwilling to change her driving behavior, which is of upmost concern. There is also concern her mental health is declining and she is both mentally and physically unable to safely operate a motor vehicle. The State is not unsympathetic to AMATUCCI, being an elderly woman with possible declining health, but it needs to consider the safety of the entire motoring public over the individual.
. . . .

Req. for Admin. Action (Dec. 29, 2021) (Doc. No. 1-1, at 29 & 6-7).

accidents that led to multiple traffic citations over a sixteen-month span.  Trooper Rae also recounted Judge Countway's concerns – expressed after hearing Mrs. Amatucci's testimony -- "about the safety of the other motorists . . ." in her findings of guilty as to the two citations to which Mrs. Amatucci responded. Req. for Admin. Action (Doc. No. 1-1) at 31-33. In the context of the document, the reference to Mrs. Amatucci being "elderly," rather than serving as a basis for an examination, appears to be little more than a factual observation.  As such it cannot support an equal protection claim.

In addition to the plain reading of Trooper Rae's administrative request, the First Circuit Court of Appeals has observed that

> where a plaintiff challenges a discrete governmental decision as being based on an impermissible criterion and it is undisputed that the government would have made the same decision regardless, there is no cognizable injury warranting relief under § 1983.

Anderson ex rel. Dowd v. City of Bos., 375 F.3d 71, 94 (1st Cir. 2004) (quoting Texas v. Lesage, 528 U.S. 18, 21 (1999).  The facts set forth in the complaint and attachments meet this standard.

In her objection, Mrs. Amatucci's does little more than restate various applicable laws and proclaim her innocence as to the three traffic violations. But as the court noted in its

Report and Recommendation, the doctrine of collateral estoppel prohibits Mrs. Amatucci from relitigating her liability in this lawsuit. Doc. No. 25 at 12-13. Accordingly, the equal protection claim against Trooper Rae should be dismissed for failure to state a claim.

### 2. First Amendment – Retaliation

Mrs. Amatucci asserts that Trooper Rae's request that her driving ability be re-examined, as well as the DMV Director's order approving that request, were actions taken in retaliation for her exercise of First Amendment and Fourteenth Amendment rights. Specifically, she claims she suffered adverse consequences because she expressed beliefs regarding her rights and obligations under state traffic laws, she objected to the traffic stops, and she challenged the traffic tickets in court.

To state a First Amendment retaliation claim, [plaintiff's] complaint must allege that (1) [plaintiff] engaged in constitutionally protected conduct, (2) [plaintiff was] subjected to an adverse action by [defendants], and (3) the protected conduct was a substantial or motivating factor in the adverse action. The third prong of this test asks whether [plaintiff has] alleged that [defendants] had retaliatory animus. And to succeed, [plaintiff] must show that [defendants'] retaliatory animus was the but- for cause of [plaintiff's] injuries, meaning that the adverse action against [the

12

plaintiff] would not have been taken absent the retaliatory motive. Gattineri v. Town of Lynnfield, 58 F.4th 512, 514-515 (1st Cir. 2023).

Once again, as with Mrs. Amatucci's equal protection claim, a full and fair reading of the facts alleged in the complaint and the documents attached thereto undermines her First Amendment claim. As described above, Trooper Rae's references to the content of Mrs. Amatucci's speech – essentially her complaints about the moving violations either at the scenes or in court – were made in support of the request for re-examination because the content of that speech created a concern about diminished driving skills, without any indication of retaliation.

As the Supreme Court has observed, "protected speech is often a 'wholly legitimate consideration' for officers when deciding whether to make an arrest." Nieves v. Bartlett, 587 U.S. 391, 401 (2019) (quoting Reichle v. Howards, 566 U.S. 658, 668 (2012)). An officer may decide to arrest the suspect because h[er] speech provides evidence of a crime or suggests a potential threat. Reichle, 566 U.S. at 668.  For example, in Nieves, police officers decided to arrest the plaintiff for disorderly conduct and resisting arrest because "they perceived [the plaintiff] to be a threat" based in part on the combative tone and content of his speech. 587 U.S. at 401;  see also

United States v. Regeneron Pharms., Inc., No. CV 20-11217-FDS, 2020 WL 7130004, at *17 (D. Mass. Dec. 4, 2020) ("It is hardly a novel legal theory that speech may provide evidence of a crime, or be an integral part of a crime, without running afoul of the First Amendment.").

    Here, it is virtually beyond dispute that the substance of Mrs. Amatucci's reactions to her traffic citations and her court appearances caused Trooper Rae to become concerned about Mrs. Amatucci's ability to drive safely, a concern Judge Countway had already declared.  As the defense argues, "[t]he crux of the issue is that Plaintiff's own statements demonstrate an obvious misunderstanding of the rules of the road and a complete disregard for the hazard that she poses to the safety of others."  Def. Mem. (Doc. No. 45-1) at 16.  Ultimately, the allegations in the complaint demonstrate that Trooper Rae had a legitimate and independent cause to support her Request for Administrative Action.  As such, Mrs. Amatucci's complaint falls short of a plausible allegation that her protected speech was the 'but-for,' retaliatory cause of Trooper Rae's request. Gattineri, 58 F.4th at 515.  Accordingly, the district judge should dismiss the First Amendment Retaliation claim against Trooper Rae.

B.  Claims Against DMV Director Marasco

   1.  First Amendment Retaliation

Mrs. Amatucci's First Amendment retaliation claim against Director Marasco is based on his approval of Trooper Rae's request for re-examination.  Report and Recommendation (Doc. No. 25) at 15.  As Mrs. Amatucci has alleged no independent basis for a First Amendment claim against Director Marasco, the district judge should dismiss this claim based on the same reasoning the court applied to the claim against Trooper Rae.

   2. Procedural Due Process

Mrs. Amatucci alleges that Director Marasco's orders directing her to undergo a re-examination of her driving ability and suspending her license without prior hearings violated her right to procedural due process.

The Fourteenth Amendment prohibits state deprivations of liberty or property without due process of law.  U.S. Const. amend. XIV.  "[T]he Due Process Clause applies to the deprivation of a driver's license by the State." Dixon v. Love, 431 U.S. 105, 112 (1977).

> "[The court's] identification of the specific dictates
> of due process generally requires consideration of
> three distinct factors: First, the private interest
> that will be affected by the official action; second,
> the risk of an erroneous deprivation of such interest
> through the procedures used, and the probable value, if
> any, of additional or substitute procedural safeguards;
> and finally, the Government's interest, including the
> function involved and the fiscal and administrative

15

> burdens that the additional or substitute procedural
> requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). The Supreme Court has, however, held that a driver's license can be revoked without a pre-revocation hearing. See Dixon, 431 U.S. at 112–15.

The Court of Appeals has explained that:

> The essentials of procedural due process comprise
> notice of the charges and a reasonable chance to meet
> them. The basic purport of the constitutional
> requirement is that, before a significant deprivation
> of liberty or property takes place at the state's
> hands, the affected individual must be forewarned and
> afforded an opportunity to be heard 'at a meaningful
> time and in a meaningful manner.' As the rubric itself
> implies, 'procedural due process' is simply 'a
> guarantee of fair procedure.'

Fusion Learning, Inc. v. Andover Sch. Comm., 609 F. Supp. 3d 5, 14 (D. Mass. 2022) (quoting Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990) (citations omitted)).

First, with respect to the re-examination order, Mrs. Amatucci fails to provide any factual support for her implicit claim that the order itself, issued pursuant to RSA 263:7 and N.H. Admin R. Saf-C 1009,[5] deprived her of any interest in

---

[5] Director Marasco's authority to order driver re-examination and suspend driver's licenses prior to an adjudicative hearing is established under New Hampshire administrative rules and statutes. See RSA 263:7; RSA 263:59; N.H. Admin. R. Saf-C 1009.02, et. seq. The Director may require a licensee to pass a driver re-examination where cause exists to question that person's fitness to drive. RSA 263:7. When a law enforcement official requests re-examination, the Director is required to determine if a licensee is a high-risk driver. See

liberty or property. Mrs. Amatucci does not assert that her license was suspended pending the outcome of the re-examination. The DMV only suspended Mrs. Amatucci's license after she failed to appear for three re-examinations, and canceled a fourth appointment. Moreover, these several opportunities given to Mrs. Amatucci are sufficient, under the circumstances present here, to satisfy the state's due process obligations. As the Supreme Court has noted, even post-deprivation process (which is not alleged here as the re-examinations were scheduled to take place <u>before</u> any potential suspension) is sufficient for suspending a driver's license where, as here, there is a significant public safety issue. See Dixon, 431 U.S. at 113-14. As the bases for the re-examination were explicitly safety-related, and her license was not even suspended until after she was given several opportunities to be heard, Mrs. Amatucci's due process claim necessarily fails.

---

Admin R. Saf-C 1009.02(d)(2). Once identified as a high-risk driver, the Director has two options: order the high- risk driver for re-examination or immediately suspend their license. Admin R. Saf-C 1009.01(reexamination is needed where a driver is determined to be high risk based on a physical or psychological condition or impairment); Saf-C 1009.02 (d)(1)-(2) (granting the director authority to order reexamination to determine fitness to operate a motor vehicle or immediately suspend a license under the emergency suspension authority granted in RSA 263:59).

C.  Mrs. Amatucci's motions

Mrs. Amatucci filed several motions for summary judgment (Doc. Nos. 27/9040, 31/9062, 35/9073 and 37/9080), a motion for judgment as a matter of law (Doc. No. 42/9097), which the court construes as a motion for summary judgment, and two motions for hearings (Doc. Nos. 44/9115 and 46/9119).  In these motions, filed before any discovery has been conducted, Mrs. Amatucci does little more than restate the allegations of the complaint (many of which are contradicted by the documents appended to the complaint) and insist either that the case immediately proceed to trial or that the defendants have no defense to her claims. Having already concluded that the district court should dismiss Mrs. Amatucci's claims for failure to state a claim for relief, it follows that her motions for summary judgment and judgment as a matter of law should be denied. See also Amatucci v. Young, No. 18-CV-1227-SM, 2021 WL 4477788, at *1 (D.N.H. Sept. 30, 2021) ("In light of its requirement of a factually supported record, summary judgment is unusual as a pre-discovery tool; it is usually reserved to a later phase of the case, after discovery has sharpened the parties' focus on the facts.")(cleaned up); see also Celotex Corp., 477 U.S. at 322,("plain language" in Fed. R. Civ. P. 56(a) "mandates the entry of summary judgment, after adequate time for discovery").

**Conclusion**

Based on the foregoing, the district judge should grant the defendants' motion to dismiss (Doc. No. 45). Plaintiff's motions for summary judgment (Doc. Nos. 27/9040, 31/9062, 35/9073 and 37/9080) and judgment as a matter of law (Doc. No. 42/9097) should be denied. If these recommendations are adopted, plaintiff's motions for hearing (Doc. Nos. 44/9115 and 46/9119) should be terminated as moot.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

July 17, 2024

cc:   Josephine Amatucci, pro se
      Counsel of Record